Thank you, Your Honor. Good morning and may it please the court. Donald Putterman for plaintiffs Doe and Rowe and with me is my partner Danielle Campbell. This is a motion to dismiss with all the usual rules that apply. Facts are taken as true, well-plated facts are taken as true, inferences favor the dismissed party, and so on. The basic problem as we see it here with the district court's decision on the first two prongs is the district court in both instances was more rigid or pigeonholing the law compared with what the law in this circuit actually is and the controlling United States Supreme Court law including Volkswagen, Burger King and Ford Motor on the second prong. This court has made very clear that on both prongs that a flexible standard should be applied to achieve substantial justice. Now with regard to the issue of minimum contacts, the court did not actually decide that but simply opined that if the standard was purposeful availment, the plaintiffs had made out a sufficient case, but if that the standard was purposeful direction that the plaintiffs had not made out a sufficient case. The problem with this is that first of all the claims for relief in plaintiff's complaint are mixed. There's a contract claim, there's intentional tort, there's negligent tort, and all of this arises not from an intentional tort but from the original contract of carriage that underlies this and what that contract incorporates in it. And this court has said in numerous cases, Yahoo, Davis and others that some combination is sufficient. In addition, the negligent tort itself does not require application of the purposeful direction standard. The standard in this case under both the old case of Holland America, which defendants claim to have been an isolated old case but in fact was stated in the more recent 2023 Herbal Brands case to reflect the current law of the Ninth Circuit, is that a tort of negligence is satisfied with purposeful availment standard. Let me ask you this. You're obviously a very good lawyer, doing a good job for your client, but here's what troubles me. As I understand the facts, virtually everything that occurred here occurred in Riyadh. You allege that there was failure to mitigate and transit, but of course mitigation is a damages issue. It's not a cause of action. It's a question of how much you get if you have an original cause of action. So what is it that occurred in Riyadh that basically deals with California? The statute we're talking about, jurisdiction, has to do with the defendant, not with your clients. By the way, I have great empathy for your clients, so I understand that. But we're just talking about whether we have personal jurisdictions here, and I'm really struggling with this because I do not see what occurred in Riyadh has anything to do with California. And indeed, taking your argument, why wouldn't anyone who experienced a check-in problem anywhere in the world claim that California, if that's the destination, would be an appropriate jurisdiction? Well, Your Honor, I think the answer is in both earlier Ninth Circuit authority, such as the Ballard v. Savage case, and of course the Shute v. Carnival Cruise lines, with which I know Judge Fletcher is quite familiar since he authored it. That was my mother. My apologies. We have two Thomases, two Smiths, and two Fletchers, so it's easy on our court. In any event, also the Impossible Foods case and the Ford Motor case, it's clear under all of these cases, Shute is very specific about it. The transaction does not have to take place in the forum, and the tort does not have to take place in the forum. Counsel, with respect, we could talk about this the whole day, but the cases that you've cited in every instance had at least one or more things that occurred specifically in California, like the ticket was bought there, or there was a car there, or something like that. We don't have anything like that here that I'm aware of. I think those cases that you're citing are completely distinguishable. Your Honor, I believe it's enough that the destination was California and that the destination was known to Lufthansa and the agent to be California. Let me ask you this. The source of the problem is really the behavior of the deputy station chief in Riyadh, so what did he know? He had the two men in front of him. Is that right? I'm sorry, Your Honor. I didn't quite catch that. Okay, so what did the deputy station chief know? He had the two men in front of him.  He knew that they were flying to California. He knew that they — Let me keep going. I'm sorry. He knew that one of them was a United States citizen, and I assume he looked at his passport, so he knew, like, where there was an address in California? Do we know that he was a Californian? He was a domiciliary in California. Did the deputy station chief know that from the material in front of him, that he was a domiciliary of California? Would the passport have told him that? I cannot unequivocally answer that. I assume he did from the passport. But that's a question that could be proved up. I believe so. And he knows that they are wanting to travel together in California, and he knows that he's got a United States citizen. I'll assume can be proved up that he is a resident of California. And if there's going to be harm that results from his action, it will be suffered by someone who is a California domiciliary. But there is more than that. Okay. And this is important. He was shown a copy of the California marriage certificate between the two plaintiffs. And his comments, which were referenced specifically in the complaint, essentially attacked the entire notion that they could be married. In effect, they attacked the right in California of gay couples to marry under California law. And that's an important distinction here. Why, counsel, with respect, why is that? We're not talking about, you know, we're not talking about whether what they believe is anything good. Quite the contrary. But we're talking about Riyadh. We're talking about a country that feels quite differently about this issue than we do in California. The fact that the agent there may know that one of these people is a U.S. citizen, what difference does that make? Since we're really talking about the conduct of the defendant and what happened occurred exclusively in Riyadh. What was said occurred exclusively in Riyadh. Your client wanted to try to mitigate this, but it only determined what occurred thereafter. You'd have to get into the Saudi, if you will, security apparatus, which gets us into yet another question. Actually, Your Honor, I respectfully disagree. And again, I am responsible. I don't think that our briefs below were a model of clarity. But regardless, under Impossible Foods, under Ford, under Shoot, and under Ballard v. Savage, first of all, no causation required. Second of all, the tort does not have to take place. The fact is there was, as this Court and the Supreme Court has generally referred to, an unbroken line between the fact that Lufthansa had a presence in San Francisco and indeed elsewhere in California, that that motivated them to buy the tickets to fly from Riyadh to California, and that that contract included the privacy provisions that the deputy station manager was a Lufthansa employee who, regardless of what they may think about things in Saudi Arabia, it was obvious that he had to comply with Lufthansa's rules and regulations in which he presumably was trained. And to that end, they presented themselves at the Riyadh airport to board the flight that would eventually take them to California. Now, under the rule in Ford Motor, followed by this Court in Impossible Foods, there is enough of a relationship, a nexus, and so on to satisfy that. No causation is required. They obviously can- Let's just say- Yes. Say we agree with you. What about the reasonableness factor here? Now, that's one of the alternatives that Judge Elson relied on here. You've got, obviously from your client's perspective, you don't want to try this in Germany, you don't want to try it in Saudi Arabia. But in order to get discovery, you're going to have to go against the Saudi Arabian apparatchiks who take such information. How are you going to get that information? What about the witnesses who saw this? Everybody's there. Nobody's here. Aren't we back to my original question of, if you're right, can't anybody who boards an airline anywhere in the world, who says the destination is California and they have a contract to that effect, can have jurisdiction in California? Isn't that what you're saying? I can't say that unequivocally, but to answer your question, potentially, yes, depending on the claim and the conduct. And, Your Honor, the real problem here is Lufthansa. First of all, our clients obviously can't go to Saudi Arabia for trial. And the fact that that would even be suggested by Lufthansa is a little egregious, since they would likely be arrested immediately, or at least Plaintiff Roe would be arrested immediately. In addition, the issue is really, where are Lufthansa's witnesses? What witnesses do they need to prevent? We pointed out in our papers that there is authority, including in this circuit, talking about the fact that with modern communication, modern transportation, and so on, that is much less of a problem than it might have been many years ago. Just like the issues of law have been made much easier by the enactment of Federal Rule of Civil Procedure 44.1. If Lufthansa wants to present witnesses at trial, whether remotely or otherwise, it's going to have to make those witnesses available for deposition. In terms of getting Lufthansa's documents in Germany, there's longstanding California authority, the old Volkswagen case, which authorizes that, that they have to produce documents from Germany. The plain fact is, first of all, and I really have to mention this, I had thought that we were long done with briefing by ambush. As the district court itself recognized, this was only brought up in a reply brief. That's entirely inappropriate. But the court dealt with it, and that's my question there, right? Your Honor, the court dealt with it in a page and a half, and the court did not deal with it consistent with the requirements of this circuit. The court did not make a finding that there was a compelling showing, which was required because the burden here was on Lufthansa. The court did not review each of the seven factors that had to be considered, which we did review now in our briefs here. And the court didn't do a balancing. The court said, well, I'm bothered by this and I'm bothered by that, which is why we actually quoted the entirety of the opinion devoted to that. And that's not dealing with it. It's especially not dealing with it when the court itself recognized in the opinion that we had not had an opportunity to respond to that. So the case law is overwhelming, and we've cited to it that you simply cannot do that. That's bushwhacking. Your time has expired. We'll give you a couple minutes for rebuttal. Thank you, Your Honors. Good morning. May it please the Court, Ivy Nowinski of Condon and Forsyth on behalf of a defendant and appellee, Deutsch Lufthansa Akian Gesellschaft, who I will refer to as Lufthansa today for ease of reference. The issue before the court today is whether it should exercise specific personal jurisdiction over Lufthansa, a German airline in connection with claims that arose exclusively in Saudi Arabia and which are, in fact, unique to the government, law, and culture of Saudi Arabia. Plaintiffs are two gay men who affirmatively allege in their complaint that they have lived together continuously in Saudi Arabia since 1989. Now, wait a minute. They don't quite allege that. That is to say one of them is a Californian. He lives sometimes in California. He spends much of his time in Saudi Arabia. Is that correct? That is correct, Your Honor, although there is an allegation in the complaint stating that both plaintiffs have lived together covertly in Saudi Arabia since 1989. No, I understand that. The question is whether or not the American lived exclusively in Saudi Arabia, and I don't think he did. Understood, Your Honor. Plaintiffs have also alleged that they were both employed. Well, rather, that defendant, I believe it's John Doe, the U.S. citizen, was employed in Saudi Arabia. I understand that. In any event, this lawsuit is their claim that Lufthansa personnel intentionally and wrongfully disclosed their marital status at the airport in Riyadh. Well, and not only disclosed it at the airport, but apparently there was electronic communication between the airport and Lufthansa headquarters in Germany. Correct, Your Honor. And there is a further allegation that this information was then somehow relayed back to the government of Saudi Arabia, be that by a covert monitoring system of emails or an informant. So the government of Saudi Arabia is clearly implicated in this case, that the nature of plaintiff's damages is that this was relayed to the government of Saudi Arabia, and that now Plaintiff Robert Rowe cannot return to Saudi Arabia out of fear of retribution. Or whether actually actively relayed to Saudi Arabia, the Saudis somehow discovered it. Exactly, Your Honor. These claims implicate Saudi culture, Saudi law, and the very practices of the Saudi government. Plaintiffs cannot satisfy their heavy burden to establish the first two prongs of the specific jurisdiction test. The Supreme Court cautioned in Worldwide Volkswagen that the goal of the minimum contacts analysis is to ensure that the states through their courts do not reach out beyond the limits imposed by them, on them rather, by their status as co-equal sovereigns. And here the plaintiffs are asking this court to do just that. Plaintiffs urge the court to exercise personal jurisdiction over a German airline in connection with an incident that occurred in Riyadh, and which implicates the government of Saudi Arabia. And so how much did the station agent know about any connections to California? Your Honor, all I am privy to are the allegations and the complaint at this point. But my understanding is that a U.S. passport was presented, and that a California marriage passport, or rather, a California marriage certificate was presented, as Mr. Putterman stated. And would the California passport say anything about the connection, excuse me, the U.S. passport say anything about a connection to California? Or would it just say United States? That is my understanding, Your Honor, is that a U.S. passport does not specify which state the owner of the passport resides in. I think it's important to ask this. My understanding is that the only reason this even came up was that this was during COVID. And during that period of time, the United States government required that for someone in this particular case who is living in Saudi Arabia who wanted to come home, if they wanted to come in with someone else, it had to be a member of their family. And so that's the only reason why the agent asked for family connections. He wasn't trying to pry into their personal lives any more than that. They needed to show them. So they then went, he wanted to talk to them in the back room. He told them that. They provided the information. It ultimately went to Germany. They got approval. These folks, in fact, did travel to California. They were not prevented from traveling. So what we're really talking about here is two things. Number one, the agent, in my view, very improperly said out loud, some people are at the desk, so you're married to this man. That wasn't fancy, but it wasn't. The second thing was, did the Saudi government pick this up? They assumed that it did. But we don't know in what way. And the only way that would be determined would be through discovery that would involve the government of the country of Saudi Arabia. And that gets tough. That opens things up. Do I misstate any part of what happened from your perspective? No, Your Honor, that's absolutely correct. Absolutely correct. And to turn to the three prongs of the specific personal jurisdiction analysis, the first issue is, of course, whether the purposeful availment or the purposeful direction standard, or both, applies here. The Ninth Circuit has stated that purposeful direction typically applies in tort cases. The Ninth Circuit has unequivocally stated that the purposeful direction test applies in intentional tort cases. And the Ninth Circuit has also said- What about the contract claim? There is a contract claim. That's a freestanding claim. Why doesn't that satisfy prong one as to that claim? Understood, Your Honor. So what the courts that have addressed this precise issue, because, of course, most lawsuits involve mixed claims involving both tort and contract, what the courts that have analyzed this precise issue have done is that they have looked at the, quote, overall flavor of the case. And there are, let me see, all district court opinions, but I think we've cited five or six district court opinions that hold that when the plaintiff has alleged causes of action sounding in both contract and tort and where the claims arise primarily from a tort or an intentional tort, that the purposeful direction test will apply. Well, I mean, we don't have a case that really addresses that specifically. We say generally it applies. We use hedging language. And so what would, if they just alleged a contract claim, wouldn't that satisfy prong one? Yes, Your Honor, if only a contract claim. So what you're saying is that because they allege some torts, that deprives them of their specific personal jurisdiction argument on the contract claim? Well, not exactly, Your Honor. My position, or Luponzo's position on this, rather, is that even where you are analyzing just a breach of contract claim, the court looks, and I'm speaking now of Ninth Circuit authority in Davis v. Cranfield and also in Global Commodities, in analyzing the purposeful availment standard for a breach of contract case, what the court looks at, and both decision mentions this, is the center of gravity of the contract. They look to the contact, those particular contacts. And here, analyzing it the way the court did, analyzing the purposeful availment analysis the way the court did in Davis v. Cranfield, they looked at contract negotiations, contract terms, contemplated consequences, and the course of dealings between the parties. So they allege the contract called for privacy and you didn't provide it? Understood, Your Honor, but there is no connection with California under that, applying that analysis. But the contract was for carriage to California. Yes, Your Honor, that is true. But as Judge Smith referenced earlier during opposing counsel's statements, by that logic, if you have a contract of carriage from the United States to anywhere else in the world, then potentially any one of your stopping points could be a point for jurisdiction on that contract claim. It could be, you know, Mozambique or Timbuktu or some jurisdiction that has very little connection to the contract between the parties. Counsel, for our purposes, obviously our district courts have gone all over the place between purposeful availment and purposeful direction. But if we just assume without deciding that they meet that qualification, isn't your stronger argument they don't meet the second prong and it's not reasonable? Yes, Your Honor, exactly. And I will turn to the second prong now, the nexus prong. What plaintiffs are urging in this case is essentially a general jurisdiction, a general personal jurisdiction inquiry. Plaintiffs are urging this Court to look at Lufthansa's general contacts with the State of California and somehow impute a nexus relationship between those contacts and this incident which occurred in Riyadh. But at the end of the day — Well, not when you're pushing on an open door. There's no way there's general jurisdiction here. This is clearly specific. If it is, if there's jurisdiction at all. Agreed, Your Honor, agreed. So I would like to go through quickly, you know, the last ten years have seen a substantial shift in jurisprudence on specific personal jurisdictions, starting with Daimler. As Your Honor notes, Daimler stands for the proposition that there is no general jurisdiction unless a company is at home in a forum. Bristol-Myers came next. That stands for the proposition that a plaintiff cannot attempt to circumvent Daimler's prohibition on general personal jurisdiction in all circumstances by claiming that a company's general contacts with the forum permit the exercise of specific personal jurisdiction over claims unrelated to those contacts. While we're talking about Bristol-Myers, I think the opinion really focuses on let's get back to due process. And we've developed all these subsidiary tests to try to answer that question. So can you tell me what violates your client's due process by having to defend this case in California, given its, you know, extensive contacts with California? Surely, Your Honor. Lufthansa is, of course, a German airline. It's the flag carrier of Germany up until just shortly before this incident, at least in substantial portion owned by the German government. The claims implicate Saudi Arabian law and culture, and in fact, a Lufthansa employee who was working in Riyadh, who is a Saudi Arabian citizen. This, all of, basically everything pertaining to this lawsuit, implicates Saudi Arabia and or German privacy law with respect to the breach of contract claim. And it will involve the application of German law, no less than two sets of different German privacy laws, which plaintiff's claim were violated in connection with this incident. Courts do that. So explain to me your theory about why this is a due process violation. Well, Your Honor, I actually, I did prepare Asahi, the Supreme Court decision in Asahi, really addresses this. And I did prepare a rather lengthy quote, but I would like to... I can read it. I know you can. But, you know, these decisions are long and sometimes the good, the ones that are really, really, really pertinent do, you know, kind of get lost in the shuffle. But in any event, I have it right here. But, you know, Lufthansa is an alien. Lufthansa is not just a citizen of another state. Lufthansa is actually a citizen of Germany. And what the Supreme Court said in Asahi is that the procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant will differ from case to case. In every case, however, those interests, as well as the federal interest in government's foreign relations policies, will be best served by a carefully into the reasonableness of the assertion of jurisdiction in the particular case. And, again, going into the reasonableness factors here... And, of course, that's just general language. As I recall, in Asahi, we had one foreigner suing another foreigner. Is that correct? Your Honor, I do know that in Asahi, the defendant was based in Asia, was the manufacturer of something related to a tire. It was a tire valve. Yes, exactly. I am not sure of the identity of the plaintiff in that case. You can go back and look. Thank you, Your Honor. But, again, in this case, we also do have aliens on both sides of the bee. Plaintiff Robert Rowe is also an alien. And, you know, Lufthansa is an alien, as well. And one of the plaintiffs, of course, is an American citizen. That is true, Your Honor. But to address that point, this is an American citizen who has chosen to live his life in Saudi Arabia and, you know, I mean, play the very nature of plaintiff's damage claims in this case. You just said that again. How much evidence do we have as to how much time the American spends in Saudi Arabia and how much time he spends in the United States? Well, there's an allegation. I believe it's either... It's in the records somewhere. I don't have the specific evidentiary site right now. But I believe there's an allegation that John Doe, the U.S. citizen, travels to the U.S. quarterly to see Robert Rowe now. But, you know, John Doe, the U.S. citizen, has affirmatively decided to continue living in Saudi Arabia following this incident, which I think demonstrates the lack of an interest in California, the lack of an interest in California courts for adjudicating this case. Before you sit down, I need to ask an unrelated question. I don't understand quite why there's federal jurisdiction here. You've got a foreign national suing a foreign entity, so there's no diversity. And you don't have any complete preemption under any decision by this court. So explain to me why we have federal jurisdiction. Well, Your Honor, it's not just an alien versus... My understanding, and I did not, of course, prepare for this today, but my understanding is that... Yeah, I know. I apologize. But it's a jurisdictional question. You discount the alien on both sides of the V, right? You discount the citizenship of both aliens. And that leaves John Doe, who is alleged to be a citizen of California, and LGBS, Lufthansa's affiliate, which is a citizen of Delaware. So you have a California citizen versus a Delaware citizen for the purposes of diversity jurisdiction. I'm not sure you have complete diversity, but you're relying on diversity. I'm sorry? You're relying on diversity. Yes, Your Honor. Okay, thank you. And agreed, I understand that the state of the law is a little bit... You can't have a foreign suing a foreigner in federal courts. Understood. And it's LGBS, the Lufthansa affiliate that creates the diversity here. Let me just follow up on that, though. One of the defendants is no longer involved in this case, if I understand correctly. Was that the Lufthansa parent, or is that the one that is the, if you will, the true defendant in this case? Well, Your Honor, the true defendant in this case is Lufthansa, Deutsche Lufthansa Aktien, Gesellschaft. The other defendant, the Delaware entity, it's called Lufthansa Group Business Services, and it's an entity that provides business services like IT and such to Lufthansa here in the United States. And my understanding is, and perhaps I'm mistaken, they got dropped, basically. Is that wrong? Well, Your Honor, both Lufthansa and LGBS were dismissed by way of the same order. It's the same order that's on appeal. Okay, but on this appeal, are your opponents still going after the Delaware-based entity, or do we know? Your Honor, the plaintiff's brief is silent on that point. Lufthansa chose not to address the LGBS issues because they were not raised by plaintiff in the opening brief, but it is not stated either way. My question took you away from your conclusion, so if you can sum up in a minute. I, of course, haven't gotten to the reasonableness prong in detail yet, but as Judge Smith stated during opposing counsel's opening remarks, those factors simply cannot be met here. Even if you do analyze each one point by point, virtually all of those factors favor Lufthansa here. This case just has no connection to the United States. Thank you, counsel. Thank you. I'll give you two minutes for rebuttal. Thank you, Your Honor. A couple of things. First of all, I do have a 2024 case which, by my own neglect, was not cited in the appellate papers, but in which Judge Freeman of the Northern District found that it was sufficient that because a flight was boarded at San Francisco Airport, even though the negligence which American Airlines was charged with occurred on a second flight from, I believe, Dallas-Fort Worth, it was a sufficient connection that under Impossible Foods that the flight had been boarded in San Francisco. But there you have, just like in Ford, you actually have a physical incident that occurred in the state of California. They boarded in California. You have nothing like that here. Well, no, but the destination was California, and either way, that's a sufficient nexus under Impossible Foods and under Ford Motors. I disagree. I understand that, Your Honor, and I see that differently. The Saudi Arabia thing is a red herring, quite honestly. First of all, Saudi Arabia is not going to allow anybody to take any discovery of any Saudi Arabian government entity. I think we can all safely assume that. However, the Lufthansa employees, our Lufthansa employees, they were obligated to conform to Lufthansa's obligations. If Lufthansa wants to present their testimony at trial, it's going to have to present them for deposition, and presumably it has the ability to do so. Second of all, in addition to the contract claim, we also have a negligent infliction of emotional distress claim, which is another claim which under Ninth Circuit law is not subject to the purposeful direction test. Third, the part that I have trouble understanding is we cited in our reply brief a very large number of cases in which Lufthansa has been a party in California. We don't understand either the issues about—now, I have not reviewed them to see whether there were jurisdictional issues and so on, but it appears a lot in California, and it clearly is no burden for it to do so. Thank you, Counsel. Thank you, Your Honors. Thank you both for your arguments today. The case just argued will be submitted for decision.
judges: THOMAS, FLETCHER, SMITH